## MAHONE *vs.* HADDOCK ET AL.

[BILL IN EQUITY TO SET UP AND ENFORCE VENDOR'S LIEN FOR UNPAID PUR-
CHASE-MONEY OF LAND.]

1. *Lien for unpaid purchase-money of land.*—M. sold and conveyed by
deed, with full warranty of title, in 1852, a tract of land to H. for $800.
Of this sum, $300 were paid at the making of the deed, leaving a bal-
ance of $500 of the purchase-money unpaid. For the payment of this
$500, H. executed his bond to M., of the same date with that of the
sale, with this condition : "If the said title (the warranty deed) shall
be sustained, and his (M.'s) right to make said deed shall be estab-
lished, in a suit about to be commenced against me (H.) for said land,
so that said title shall be declared a good and lawful title to said land,
then the above bond shall be of full force against me (H.) for the pay-
ment of the money therein specified ; but if such title shall fail, then
I (H.) am bound to deliver said deed to M. as cancelled, upon which he
(M.) is to deliver up the bond as cancelled." H. went into possession,
under the contract of sale, and died in possession, and his distributees
and representatives continued in the possession of the land after H.'s
death, up to the filing of the bill, in February, 1862. No suit was ever
brought against H. for the land, as was apprehended at the making of
the bond, and nothing appeared to threaten the legal sufficiency of the
title from M. to H. M. died in Georgia, in 1856, and his widow admin-
istered on his estate in that State, and thereafter was married during
her administration to E., and E. and his wife, as administrator and ad-
ministratrix, in Georgia, of M.'s estate, transferred and assigned the
bond for $500 to Mahone, the complainant : *Held,*—that the bond in
the possession of Mahone, as transferree, is a lien upon said land for
the unpaid purchase-money, and the suit to enforce the same was not
prematurely brought.
2. *Vendor's lien ; what not destroyed by.*—The failure to present the bond,
for the balance of the unpaid purchase-money, to the administrator of
H., within the time required by law to prevent a bar, does not cut off
the vendor's lien ; it only cuts off the right of the transferree to par-
ticipate in the distribution of the estate of H. with the other creditors,
who have duly presented their claims.
3. *Foreclosure, right of ; when barred.*—The right to forclose, in such a
case, is only barred when a mortgage, for like purpose, would be barred.

APPEAL from the Chancery Court of Macon.
Heard before Hon. N. W. COCKE.

The facts are sufficiently set out in the opinion.

GUNN & STRANGE, for appellant.

GRAHAM & ABERCROMBIE, for appellees.

PETERS, J.—The bill in this case was filed by William
C. D. Mahone, against Thomas W. Haddock and others,
in the thirteenth district of the southern chancery division
of this State, in the year 1862.   The final decree dismiss-
ing the bill purports to have been rendered in 1867, but it
has no date.   From this decree Mahone appeals to this
court.

It is shown by the allegations of the bill, that William
Matheson sold and conveyed to John B. Haddock a tract
of land lying in the county of Macon, in the State of Ala-
bama, for the sum of eight hundred dollars.   Three hundred
dollars of this sum was paid at the sale, and the payment
of the residue was secured to be paid by Haddock's obli-
gation to Matheson, bearing date August 14, 1852 ; which
is in the following words :

" Georgia, Muscogee county.

" Know all men by these presents, that I, John B. Had-
dock, of the county of Macon and State of Alabama, do
hereby acknowledge myself bound, and do promise to pay
to William Matheson, his heirs and assigns, the sum of five
hundred dollars for value received, and for payment of
which I bind my heirs, executors and administrators jointly
and severally, firmly by these presents.

" With the following condition and understanding : that
whereas, the said William Matheson has this day made me
a title to the south half of section twenty-nine, in township
fifteen of range five, in the county of Macon and State of
Alabama, which he claims as heir-at-law of George Smith,
deceased.   Now, if the said title shall be sustained, and
his right to make said deed shall be established in a suit
about to be commenced against me for said land, so that
said title shall be declared a good and lawful title to said
land, then the above bond shall be of full force against me
for the payment of the money therein specified ; but if said
title shall fail, then I am bound to deliver said deed to said
Matheson as cancelled, upon which he is to deliver up the

bond as cancelled. Witness my hand and seal, this 14th August, 1852.                    J. B. HADDOCK, [seal.]

"Test: Wiley Williams."

Haddock took possession of said land under said contract of sale, and received from Matheson and wife a deed for the same, with full warranty of title, of the date of August 14th, 1852.

Matheson died in December, 1855, in the State of Georgia, leaving his wife and several children surviving him; and Haddock died in December, 1859, in this State, leaving a widow and several children surviving him. Mrs. Matheson administered on her husband's estate in Georgia, after his death, in January, 1856, and in September, 1858, whilst she was such administratrix of the estate of said William Matheson, she intermarried with Theo. Ewing, and Ewing thereupon, by virtue of said marriage, in right of his wife, said Elizabeth Ewing, became administrator of the estate of said Matheson in the State of Georgia.

On November 21st, 1860, said Mahone, in due course of trade and for valuable consideration, became the transferree and assignee of said obligation, above set out, from said Ewing and his wife, said Elizabeth Ewing, as administrator and administratrix of the estate of said Matheson, deceased; and thereupon said Mahone became subrogated to all the rights intestate and his representatives and heirs had in the collection of said obligation, and that said obligation was a lien on said land therein named for the balance of the purchase-money unpaid thereon.

It was further alleged, that the suit which was anticipated and alluded to in said condition of said obligation had not been brought, and that it never would be brought; and that the title made by Matheson to Haddock to said land was and still is a good and lawful title to said tract of land. And that said intestate Haddock, in his life-time, nor the representative of Haddock, since his death, had not paid said purchase-money named in said obligation, or any part thereof, and that the same was wholly unpaid and due; and that after the death of said Haddock, George W. Nicholson had been appointed administrator of his estate, by the judge of probate of said county of Macon in this State;

and that said Nicholson had reported said estate insolvent, and that said estate is likely to be settled as an insolvent estate. It is also alleged, that the annual rent of said lands since they went into the possession of said Haddock, had been worth a large sum of money, to-wit, $500. The original obligation above set forth has an assignment written thereon in the following words :

" The State of Georgia,   }   We, T. Ewing, adm'r, and   Muscogee county.   }   Elizabeth Ewing, administratrix, transfer and assign the within bond, obligation or note to William C. D. Mahone, or his heirs and assigns, and give him entire control and direction of the same, for value received. Witness our hands and seals, this the 21st day of November, 1860.

T. EWING, Adm'r, [L. S.]
ELIZABDTH EWING, Adm'rx, [L. S.]"

It is alleged that this assignment was made by the said Ewing and wife as the administrator and administratrix of the estate of said Matheson, who were legally such, by appointment under the court of ordinary of the county of Muscogee in the State of Georgia, as authorized and required by the laws and constitution of the said State of Georgia, and that the assignment so made vested in said Mahone all the rights of said Matheson and his heirs to said obligation; and the laws and constitution of Georgia, showing the jurisdiction of said court, are made exhibits to the bill.

The said T. Ewing and his wife, Elizabeth, as the representatives of the estate of said William Matheson, deceased, and the heirs and distributees of the said William Matheson are made parties defendant to the bill; so is Geo. W. Nicholson, as the representative of the said John B. Haddock, deceased, and the heirs and distributees of said Haddock are made parties defendant to the bill. And the relief asked is, that the land shall be sold for the payment of the balance of the purchase-money unpaid, or that the sale shall be cancelled and rescinded, and for general relief.

All the parties to the bill are properly before the court.

The minors put in a formal answer, alleging that their knowledge of the matters in controversy is wholly by information, and ask for due proof of the facts set forth in the bill.

George W. Nicholson, as the representative of the estate of John B. Haddock, deceased, and for himself and his wife, Celia, formerly Haddock, puts in an answer, in which he admits the sale of the land as shown in the bill, and the death of the parties to the original transaction. He denies the transfer of the obligation bearing date the 14th day of August, 1852, executed by Haddock to Matheson, as stated in the bill; and he also denies that the complainant is subrogated to any rights under said bond, and that complainant has any lien upon said land for the payment of any purchase-money due from him or his intestate, or otherwise, for said land; and he denies that said transfer was ever executed by said Ewing and wife. And by way of plea he also answers, that said claim for the debt mentioned in said bond was never presented to him, as such administrator as aforesaid, within eighteen months after notice of said administration was published, or filed in the probate court of Macon county within that time. He admits that the estate of Haddock had been declared insolvent. He denies that any portion of the purchase-money for said land is due from his intestate.

There are two questions which arise on the allegations and proofs submitted in this case.

The first is, had Mahone such a title to the bond executed by Haddock to Matheson, on the 14th day of August, 1852, as would entitle him to enforce the same in a court of chancery? And the second is, had the time arrived that he was authorized to proceed by suit to enforce the collection of the bond at the time he filed his bill?

It appears, from all the proofs, that Mahone came rightfully into possession of the bond in controversy, on the 21st day of November, 1860; that he held it as the transferree of T. Ewing and Elizabeth Ewing, who were the administrator and administratrix of the estate of William Matheson, deceased. Mrs. Ewing and her husband are parties to the bill, and they confess, as against themselves

and the estate they represent, that the transfer was made as alleged in the bill.    This is also proven by the testimony of Alexander Matheson.    The answer does not deny that Ewing and his wife were the representatives of the estate of William Matheson, deceased, in the State of Georgia, properly appointed by law in that State ; but the respondent Nicholson admits that he does not know this fact, and demands proof.    The proofs show that Mrs. Ewing was appointed administratrix of her deceased husband's estate before she intermarried with Ewing, and that Ewing, after such marriage, was appointed administrator *de bonis non* of Matheson's estate in 1858, before the transfer to Mahone.

It does not appear that Mrs. Ewing ever resigned her administration of her husband's estate, either before or after her marriage with Ewing.    There is no proof showing what the laws of Georgia are which govern such a state of facts.    In such case, if no statute law is shown, the court presumes that the common law prevails in that State and governs the relations of the parties.—*Reese v. Harris*, 27 Ala. 301 ; *Foster v. Glazener*, 27 Ala. 391 ; *Ellis v. White*, 25 Ala. 540 ; *Walker's Adm'r v. Walker's Adm'r*, 41 Ala. 353.    At common law, the marriage of the wife administratrix entitles the husband to administer in his wife's right for his own safety, and he has the power of disposition over the personal property vested in the wife as administratrix. 2 Wms. on Ex's, 698, marg.    Then the transfer of the bond by Ewing and his wife was sufficient to vest in Mahone a title which would authorize him to sue in equity.

The other question is one of more difficulty of solution. But evidently Matheson did not intend, by the whole contract, to transfer the lands mentioned in the bond and the deed to Haddock for the sum of three hundred dollars, which was paid at the date of the sale, and release him from the payment of the residue of the price agreed upon, or to postpone the payment of the $500 beyond a reasonable time.    But the condition of the bond was so drawn as to defend Haddock from a contingency, which, at the time the sale was made, it was supposed was about to happen. If this contingency did happen, then the sale was to be rescinded, or the bond and the deed were to be cancelled.

This was evidently the meaning and purpose of the parties. The words of the condition are, " if said title should be sustained, and his (Matheson's) right to make said deed should be established, (in a suit about to be commenced against me (Haddock) for said lands,) so that said title *shall be declared a good and lawful tille* to said land, *then* the above bond shall be of full force against me for the payment of the money therein specified ; but if the title *shall fail*, then I am bound to deliver the deed to said Matheson as cancelled, upon which he is to deliver up the bond as cancelled." Now, it seems to me that the parties to the bond intended to make the payment of the sum of money therein named dependent upon the efficiency and legality of the title, made by Matheson to Haddock, and not upon the bringing of the suit referred to in the condition. It was only upon a failure of the title, that the contract was to be rescinded. And it was this that the parties intended to provide against. The suit was incidentally mentioned as likely to occur, and if it did occur, its effect, in defeating the title, was to be provided against. It was not intended, if no suit was brought, the money should not be paid.

Then, if Haddock got what it was his intention to buy, that is, the land with a good title, such as the deed professed to convey, he ought to pay the price that he promised to give—that is, the sum mentioned in the bond, and interest from the time it became payable.

The bill alleges that Matheson's title to Haddock is legal and sufficient, and no suit has been brought to *disturb it*, or will ever be brought. These allegations are not denied, or evaded by any of the defendants. They refer to facts equally open and known to all the parties, and should have been met by a direct denial. There is no proof, or intimation of proof, that they are not true. So, the title by the deed has not failed, and there is no fact disclosed or pretended, that would justify any serious belief that it will fail. And if the representative of the estate of Haddock elects to hold on to the land under the deed of Matheson, he must pay the price agreed to be given for it, if there is no other valid objection to its payment.—2 Bouv. L. Dic. (12th ed.) *Vendor's Lien*, p. 633.

The bond given by Haddock to Matheson, of August 14th, 1852, for five hundred dollars, in the hands of the complainant Mahone, is a lien for the payment of the purchase-money due and unpaid. The transfer of the bond to Mahone passed all the equity in favor of Matheson to Mahone.—4 Kent, 151, 152, 153, 154; *Day v. Preskett*, 40 Ala. 625; *Conner v. Banks*, 18 Ala. 42; *Burns v. Taylor*, 23 Ala. 255. The failure to present the claim to the administrator within the eighteen months required by the statute, does not cut off the right of the transferree of the bond to enforce the vendor's lien; it only deprives him of the right to participate in the distribution of the estate.— *Duval's Heirs v. McLoskey*, 1 Ala. 708; Rev. Code, § 2239. The debt is not extinguished, but the right of action against the administrator is barred. It is presumed that if the intestate had been a mere security to the bond, the effect of the right of action against him would not have released another security who was not so situated as to claim the same bar. Here the lien is a separate security in the nature of a mortgage, and it can only be barred when the mortgage would be barred. And the decree upon the bond may be simply for a foreclosure of the mortgage, or it may be for a foreclosure of the mortgage and for the debt also, except when the debt is barred, as it is in this case, if the proof sustains that allegation of the answer, about which no opinion is expressed. But a decree of foreclosure may still be given for the complainant, and the proceeds of the sale of the land applied to the payment of the bond for the balance of the purchase-money that may be found to be due and unpaid.

The proofs do not sustain the allegation, that there has been a material alteration in the assignment made by Ewing and his wife, as the representatives of Matheson, on the back of the bond. The supposed alteration is not such an one as would vitiate the assignment, even were it admitted. But it is neither admitted nor sufficiently proven. Ewing and his wife were both competent witnesses to this fact, and as they were not examined, there is no evidence before the court which would justify such a conclusion.— 2 Parsons on Contracts, (5th ed.) pp. 720, 721. The mere

fact that the words ".administrator" and " administratrix" were added to the names of Ewing and wife in a different hand-writing and with a different pen and ink, where these words occur in the indorsement on the bond, is not enough, without further proof, to establish the fact of alteration in the indorsement after it was made. This could not be regarded as a material alteration of such an indorsement, and might have been made at the instance of all the parties to the instrument. And this court is authorized so to infer this, unless there is proof to the contrary. The evidence of Alexander Matheson rather sustains this view of the case than contradicts it.

The debt in the bond became due as soon as it was ascertained that the title to the land would not fail. This event was supposed to rest upon the fact of the institution and event of a certain suit against the intestate, Haddock. The bill alleges that the title to the lands was good and legally sufficient. This is not denied. It is also alleged that the apprehended suit would never be brought. This is not met by any such denial as to leave any reasonable suspicion on the mind of the court, that there is any one in existence who is likely to institute such suit, or that there is any danger to the title from this source. I therefore think that the suit was not prematurely brought, and that the bill ought not to have been dismissed.

The decree of the court below is therefore reversed, and cause remanded for further proceedings in the chancery court, in conformity to this opinion, and appellee Nicholson, administrator of Haddock, will pay the costs of this court and of this appeal in the court below.