# Watson v. Rose's Executors.

*Bill in Equity to establish and foreclose Lost Mortgage.*

1. *Forfeiture of debt not duly filed against insolvent estate.* — A claim against an insolvent estate, not duly filed within nine months after the declaration of insolvency (Rev. Code, § 2196), is "forever barred" and destroyed as a subsisting debt.

2. *Subrogation of creditor to rights of surety under mortgage.* — A creditor, whose claim against the insolvent estate of his deceased debtor has been destroyed as a subsisting debt, by the failure to file it within nine months after the declaration of insolvency, cannot be subrogated in equity to the rights of a surety under a mortgage given for his indemnity by the debtor.

APPEAL from the Chancery Court of Montgomery.

Heard before the Hon. ADAM C. FELDER.

The bill in this case was filed on the 11th March, 1871, by the executors of the last will and testament of Howell Rose, deceased, against Mrs. Sarah S. Watson, who was the widow of H. P. Watson, deceased; and also against the personal representative of said H. P. Watson, the personal representative of William H. Rives, deceased, and Charles G. Gunter, a non-resident. Its object was to establish a mortgage, which was lost when the bill was filed, but was afterwards found, pending the suit, in the office of the probate judge of Montgomery county, where it had been left for record by one of the subscribing witnesses, but had never been recorded; also, to foreclose the mortgage by a sale of the mortgaged property (the hotel building in the city of Montgomery known as the "Montgomery Hall"), and apply the proceeds of sale to the payment of a judgment, which the complainants' testator, Howell Rose, had recovered against the personal representative of said H. P. Watson, the mortgagor. The mortgage was dated the 28th day of March, 1860; was given by said H. P. Watson to said Wm. H. Rives and Charles G. Gunter, to indemnify and save them harmless against liability as drawers, for his accommodation, of a bill of exchange for $6,000, dated the 25th March, 1860, payable twelve months after date, to said Howell Rose, and accepted by said H. P. Watson; and conveyed to said Rives and Gunter one hundred shares of the capital stock of the "Montgomery Hall Company," which was the entire capital stock of said company, and the real estate belonging to it. The mortgage recites, that said Rives and Gunter drew the bill

[Watson v. Rose's Executors.]

of exchange for the accommodation of said Watson, and that he was desirous to "save them harmless in the premises, and to prevent them, or either of them, from any loss or detriment in their aforesaid accommodation for him;" and the condition was in these words: "Conditioned, nevertheless, that should the said H. P. Watson pay off and discharge the aforesaid bill of exchange at maturity, or cause the same to be done, so that the said party of the second part, or either one of them, will be entirely released therefrom, and have no part of said bill to pay, neither of principal, interest, costs, or damages thereon; then, and in that event, this deed to be null and void, and of no effect in law or equity. But, should the said party of the first part fail or refuse to pay off and discharge the said bill of exchange at maturity, and the party of the second part, or either of them, have to pay any portion of said bill of exchange, interest, costs, or damages thereon; then, and in that event, the said party of the second part may, at pleasure, take possession of the premises, and, after advertising the sale thereof, for thirty days, in any one of the newspapers published in the city of Montgomery, of the time and place of sale, expose to public auction, before the door of the '*Montgomery Hall*,' on Market street, the whole, or any part of the said stock, for cash; with full power to convey to the purchaser a full transfer of such part thus sold and purchased, and apply the proceeds — first, to the expenses incurred in advertising and selling such stock; and then, whatever portion of said bill of exchange, interest, costs, or damages, paid by them, or either of them, to be refunded, and the balance applied to the payment of whatever amount of said bill, interest, costs, or damages remains unpaid, so as to release any possible liability the said party of the second part may have incurred in the said accommodation for the party of the first part; and if any cash remains from the said sale thus made, after paying off all expenses, debt, interest, costs, or damages, arising from said default on the part of said party of the first part, the party of the second part will pay it to the said party of the first part, or any one authorized by him to receive the same."

Howell Rose commenced suit against all the parties to this bill of exchange, and recovered judgments in 1866. H. P. Watson died while the suit was pending against him, and judgment was rendered against Mrs. Sarah S. Watson, his widow and administratrix, on the 23d June, 1866, for $8,760. On this judgment Mrs. Watson paid, on the 12th July, 1868, the sum of $4,000, and took an assignment of the judgment to that amount to herself. W. H. Rives died after the rendition of judgment against him, and his estate was declared insolvent, and about $750 was paid on the judgment from the assets of

his estate. Gunter removed beyond the limits of the State after the rendition of judgment against him, and an execution on the judgment was returned " No property found." Watson's estate was declared insolvent on the 15th January, 1868, and Mrs. Watson made a settlement of her administration with the probate court; and afterwards, W. A. Gunter, a son of said Charles G. Gunter, was appointed administrator of the insolvent estate. Said W. A. Gunter, as administrator of said insolvent estate, sold the " Montgomery Hall " property, or said H. P. Watson's interest in the capital stock, under an order of the probate court; and Mrs. Watson became the purchaser at the sale, for $5,000, having previously bought up all the claims against her husband's estate. The sale was reported to the probate court, and was confirmed. The complainants' judgment against Watson was not filed by them as a claim against his estate, but it was filed by Mrs. Watson after the assignment to her.

The chancellor overruled a demurrer to the bill, and, on final hearing on pleadings and proof, rendered a decree for the complainants; and his decree is now assigned as error.

ELMORE & GUNTER, with STONE & CLOPTON, for appellant. — 1. The mortgage was required by law to be noted on the books of the corporation; and not having been so noted, it is declared void as against subsequent purchasers without notice. Rev. Code, § 1786. Mrs. Watson cannot be charged with notice of it. She had heard that there was some mortgage in existence; but, on the most diligent inquiry, could obtain no information whatever about it. What debt it secured, what property it conveyed, what its terms were, no one knew; and it was supposed by every one to be lost, until after the commencement of this suit. If the mortgage had been left for record, or had even been recorded, its registration would not have been constructive notice, since the law did not require its registration there. *Stewart* v. *Kirkland*, 19 Ala. 162; *Hatcher* v. *Clifton*, 35 Ala. 275. But there was no proof that the paper had ever been left for record. It was not left among the mortgages to be recorded, and there was no mark or memorandum on it. *Beene* v. *Blevins, Phillips & Goldsby*, 37 Ala. 312. A party cannot be charged with knowledge or notice of a fact, when, by the most diligent search and inquiry, he cannot obtain any information whatever about it.

2. Even if Mrs. Watson could be charged with notice, she would be entitled to protection through her purchase from other creditors who had no notice. *De Vendell* v. *Doe, ex dem. Hamilton*, 27 Ala. 156; *Jordan* v. *Mead*, 12 Ala. 247. A decree of the probate court declaring an estate insolvent, while

[Watson v. Rose's Executors.]

it debars creditors from any execution in common form, creates a lien on the property from its date, and must be accorded the effect of a judgment and execution. Kerr on Injunctions, 107; *Paxton* v. *Douglas*, 8 Vesey, 520; *Dargan* v. *Waring*, 11 Ala. 988; *Ray* v. *Thompson*, 43 Ala. 457; *Edwards* v. *Gibbs*, 11 Ala. 292; 3 Paige, 367–8; 1 Story's Equity, § 547; 2 Abbott's Digest, 291, §§ 77–8; *Dornford* v. *Dornford*, 12 Vesey, 127.

3. The complainants having sold an interest in their claim to Mrs. Watson, by whom the debt was filed as a claim against the insolvent estate of her husband, and a dividend received from the sale of the property as general assets, they are estopped from asserting the claim now set up by them. *Williamson* v. *Ross*, 33 Ala. 509; *Pickens* v. *Yarborough*, 30 Ala. 408. If Mrs. Watson filed only her own interest in the claim, and received a dividend on that interest only, the same rule must prevail. The debt was an indivisible cause of action, and could not be severed and split up. *Firemen's Insurance Co.* v. *Cochran*, 27 Ala. 288; *O'Neal* v. *Brown*, 21 Ala. 482; *Oliver* v. *Holt*, 11 Ala. 574; *Battle* v. *O'Brien*, 5 Ala. 316.

4. The complainants never filed their claim against the insolvent estate. This destroyed and extinguished it as a subsisting debt. *Murdock* v. *Rousseau*, 32 Ala. 611; *Bell* v. *Andrews*, 34 Ala. 538; *Puryear* v. *Puryear*, 34 Ala. 555; *Sharp* v. *Sharp*, 35 Ala. 574. A mortgage is but a security for a debt; and where there is no subsisting debt, it is difficult to see how there can be any right to enforce a mortgage. The case of *Duval* v. *McLoskey* (1 Ala. 710) was decided under a different law, which did not extinguish the debt, but only barred the remedy. There can be no subrogation, where there is no subsisting debt. *Foster* v. *Trustees*, 3 Ala. 302; *McNeill* v. *McNeill*, 36 Ala. 109; 8 Watts, 384.

FITZPATRICK & WILLIAMSON, *contra.* — 1. Mrs. Watson had actual knowledge of the mortgage as far back as 1866. She was then put upon inquiry, and might, by the use of proper diligence, have found it where it was afterwards found. *Br. Bank* v. *Cullum*, 23 Ala. 797; *Br. Bank* v. *Robertson*, 19 Ala. 798; *Shaw* v. *Spence*, 1 Amer. R. 120.

2. It is impossible to resist the conclusion, on an examination of the evidence, that the mortgage was left in the office of the probate judge, for record, on the 20th September, 1865; and this was operative as constructive notice, as fully as if it had then been recorded. Rev. Code, § 1539; *Mims* v. *Mims*, 35 Ala. 25.

3. Mrs. Watson acquired no rights by her purchase at the administrator's sale. She and the administrator are bound by

[Watson v. Rose's Executors.]

the mortgage of the intestate, whether either of them had notice or not. The administrator could only sell, and she could only buy, the interest which remained in the intestate, — that is, the equity of redemption. The administrator was bound by the mortgage, and a purchaser from him cannot assert any other or greater rights than he could assert. A creditor, seeking to assert rights against property as to which the administrator is estopped, must proceed against the property directly. *Marler* v. *Marler*, 6 Ala. 366; *Densler* v. *Edwards*, 5 Ala. 36; *Roden* v. *Murphy*, 10 Ala. 810; *Pharis* v. *Leachman*, 20 Ala. 678; *Watts* v. *Gayle*, 20 Ala. 823.

4. Judgment creditors, within the meaning of the statute (Rev. Code, § 1557), are creditors with a lien, — creditors who may have an execution. *Wells* v. *Morrow*, 38 Ala. 129; *Flash* v. *Ravesies*, 32 Ala. 451; *De Vendell* v. *Hamilton*, 27 Ala. 164; *Jordan* v. *Mead*, 12 Ala. 251.

5. The failure to transfer the stock on the books of the company could only operate in favor of the company or its creditors, whose rights are not involved in this controversy. The mortgagee had the equitable, if not the legal title. *Duke* v. *Cahaba Nav. Co.* 10 Ala. 82; 3 Howard, 511.

6. After the execution of the mortgage, Watson held the property as trustee for the mortgagees. *Herbert* v. *Hanrick*, 16 Ala. 594; *McGuire* v. *Shelby*, 20 Ala. 456; *Boyd* v. *Beck*, 29 Ala. 703. Mrs. Watson took it as held by her intestate, and by her subsequent purchase the trust was refastened on the property. 1 Story's Equity, § 1264; 2 Ib. § 410.

7. The complainants have the right to be subrogated to all the rights of Rives and Gunter under the mortgage. *Toulmin* v. *Hamilton*, 7 Ala. 362; *Ohio Life Ins. & Trust Co.* v. *Ledyard*, 8 Ala. 866. The right of subrogation, in this case, is not raised by mere implication of law, but is created by the very terms of the mortgage, which was given, not only to indemnify the sureties, but to secure the debt. The legal estate was vested in the mortgagees on the express trust to pay the bill of exchange; and all the cases hold, that a court of equity will compel the execution of the trust at the suit of the creditor. *Homer* v. *Savings Bank*, 7 Conn. 484; *Eastman* v. *Foster*, 8 Metc. 19; *Dick* v. *Maury*, 9 Sm. & Mar. 456; *Ross* v. *Wilson*, 7 Ib. 766; *Parris* v. *Hull*, 26 Vermont, 308; *Calvin* v. *Calvin*, 3 Grattan, 363; 22 Illinois, 546; 11 B. Monroe, 399; 35 Penn. St. 111; 25 N. Y. 552; 18 Ohio, 35; 6 Georgia, 392; 2 Sugden on Powers, ed. 1856, p. 145; Tiffany & B. on Trusts, 209–22; *Taylor* v. *Morrison*, 26 Ala. 728. Such an express trust is not affected by the statute of limitations or non-claim. On this point, there is no difference between the statute of non-claim prescribed by the Revised Code (§ 2196)

and the former statute found in Clay's Digest, p. 195, § 17.
*Duval* v. *McLoskey*, 1 Ala. 740; *Mahone* v. *Haddock*, 44 Ala.
99. Any other construction of the statute would discriminate
against our own citizens, since the United States courts allow a
recovery notwithstanding the bar of the statute of non-claim.
*Suydam* v. *Broadnax*, 14 Peters, 67; *Union Bank* v. *Jolly*, 18
Howard, 503; *Green* v. *Creighton*, 23 Howard, 90.

PETERS, C. J. — On the 25th day of March, 1860, Hugh
P. Watson procured Charles G. Gunter and Wm. H. Rives to
draw a bill of exchange of that date for his accommodation,
payable to Howell Rose, for $6,000, falling due in twelve
months after date, which was accepted by Watson himself.
After this, on the 28th day of March, 1860, Watson executed
a mortgage to said Gunter and Rives, of one hundred shares of
the capital stock of the "Montgomery Hall Company," and
some other property, to "save said Gunter and Rives harmless
in the premises, and to prevent them, or either of them, from
any loss or detriment in their aforesaid accommodation to
him," said Watson. This bill of exchange was passed to Rose
by Watson, and Rose thereby became the holder and owner of
the same. Said bill was not paid at maturity. Watson died
in 1865, and his wife, the appellant, became the administratrix
of his estate. Her administration continued until it was ascer-
tained that the estate was insolvent, and so declared. Mrs.
Watson then made final settlement of her administration, and
was discharged. She was succeeded by William A. Gunter,
as administrator *de bonis non*. Gunter, as such succeeding
administrator, sold, by order of court, the property conveyed
in said mortgage, as required by law; and Mrs. Watson be-
came the purchaser, at said sale, of said one hundred shares of
stock. This sale seems to have been regular, and was regu-
larly reported, and confirmed. It also appears that Rose died,
testate, in 1866, and appointed the appellees his executors.
Rives also died, and Waller became the administrator of his
estate. Judgments were obtained against all the parties to
said bill of exchange, some time in 1866. Certain payments
were made upon these judgments; some by Mrs. Watson,
during her administration of her husband's estate; and certain
other payments were made by said Rives, which it is not nec-
essary to specify more particularly. The proof does not show
that the judgment against Watson's representative was ever
filed in the office of the judge of probate, properly verified,
within nine months after his estate was declared insolvent.
Nothing was ever paid on the judgment against Gunter.
These facts are sufficient to make manifest the principles set-
tled in the present opinion. The bill of complaint seeks an

account against the defendants below, and a subrogation of the complainants to the rights of Gunter and Rives under the mortgage to them, and a sale of the stock of the "Montgomery Hall Company," purchased by Mrs. Watson at the administrator's sale, as above shown.

The mortgage executed by Watson in his lifetime to Gunter and Rives was for their security and indemnity against any loss or damage, which they, or either of them, might sustain by reason of making the bill of exchange mentioned in the mortgage for his accommodation. This bill of exchange created but a single debt, though all the parties to the paper were severally liable to pay the same to the holder. The bill of exchange was payable to Rose, and he was the holder and owner of the same. This made him the creditor of Watson, and, on Watson's death, this debt became a charge in favor of Rose on Watson's property. Rev. Code, § 2060. But he was not a party to the mortgage, nor was it made to secure the payment of the debt evidenced by the bill of exchange to him. His claim depended upon his right as a creditor of Watson. The debt arising out of the bill of exchange was really Watson's debt, and as such it rested as a charge on Watson's property, in whose hands soever the same might be found, which was not exempt from the payment of his debts. Gunter and Rives were merely his sureties. This is so alleged and charged in the pleadings in the court below. The property conveyed in the mortgage belonged to Watson. By the conveyance, it was subjected to the control of the mortgagees, to be sold for the satisfaction of the mortgage debt; and as such it became a trust fund, or pledge, in their hands, for the payment of the mortgage debt, evidenced by the bill of exchange. It was still Watson's property, devoted to a certain purpose; that is, the satisfaction of a debt which he was bound to pay as long as it subsisted as a legal claim against him, or his estate. For this reason, it is a well settled doctrine in courts of equity, that a creditor is entitled to the benefit of all pledges, or securities, given to or in the hands of a surety of the debtor, for his indemnity; and this, whether the surety is damnified or not. *Ohio Life Ins. & Trust Co.* v. *Ledyard,* 8 Ala. 866.

In the case last quoted it is said: " In the case of *Toulmin* v. *Hamilton* (7 Ala. Rep. 367), which, upon this point, is in principle identical with this, we had occasion to consider this question. It was there, upon great consideration, held, that when a deed of trust was given to indemnify an accommodation acceptor, the holder of the paper might resort to the property for the payment of the paper when dishonored." 8 Ala. 872. This is a right established in equity in favor of a creditor against his debtor. It must, therefore, be shown that the

[Watson v. Rose's Executors.]

party complaining is a creditor of the person whose property has thus been placed in pledge. If this is not shown, and the relation of creditor and debtor fails, the principle above stated also fails. In the present instance such is the case. After Watson's death, his estate was regularly declared insolvent; and it does not appear that the claim or debt here insisted on was ever properly filed and verified, in order to save it from the bar of insolvency. The rule established by our statute, in such a case, is expressed in these words: " Every person, having any claim against the estate declared insolvent, must file the same in the office of the judge of probate, within nine months after such declaration, or after the same accrues, verified by oath of the claimant, or some other person who knows the correctness of the claim, and that the same is due, or it is forever barred." Rev. Code, § 2196. This statute has come under frequent discussion in this court since the proclamation of the Code in 1853; and in all the later cases it has been uniformly construed to mean that the words " forever barred " operate to destroy the debt which has not been duly verified and filed. In the case of *Murdock* v. *Rousseau's Adm'r* (32 Ala. 611), the court say: " We think the effect of this language is to destroy the claim as a subsisting debt." See, also, *Sharp* v. *Herrin*, 32 Ala. 502; *Bell* v. *Andrews*, 34 Ala. 538; *Puryear* v. *Puryear*, 34 Ala. 556; *Sharp* v. *Sharp*, 35 Ala. 576; *Ray* v. *Thompson*, 43 Ala. 451. If the debt against Watson's estate was destroyed, as it was by the failure to file it properly verified as required by law, under the decree of insolvency, the relation of creditor and debtor between Rose and Watson, or between the personal representatives of their estates, was also destroyed. Then, at the filing of the bill of complaint in this case, there was no debt owing by Watson, or Watson's estate, to Rose, or Rose's estate. Consequently, Watson's property was not subject to be sold for its satisfaction. The debt against Watson's estate having been discharged by the proceedings in the insolvency, his property could not be seized for its payment. Such was its situation as to Rose, or Rose's estate. Then, it passed to Mrs. Watson on the administrator's sale, free of this charge. By the failure to file the claim under the decree of insolvency, the same was, in effect, relinquished forever. It cannot, therefore, be enforced in the manner here attempted. If this should be allowed, the discharge on the insolvency would amount to nothing.

It is proper to add, that the principle thus established does not apply to Gunter and Rives, the mortgagees. They are still liable to Rose's estate, if the claim has been properly presented to Rives's administrator, but only in the event this has been done as to Rives's estate. They may still enforce their

rights under the mortgage, whatever they may be. Upon this question we decline to express any opinion.

The decree of the court below is erroneous. Therefore, let the judgment of the court below be reversed, and judgment will be entered here, dismissing the bill at the costs of the appellees.

NOTE BY REPORTER. — On a subsequent day of the term, in response to an application for a rehearing by the appellees' attorneys, the following opinion was delivered : —

PETERS, C. J. — This application for a rehearing merely seeks a review and reversal of the conclusion arrived at in the original opinion. It does not seem to me that the authorities relied on to justify such a course are sufficient to sustain it. The representatives of Rose do not show any debt in Rose's favor, against Watson, or Watson's estate. Rose's equity depends upon his debt; when this is gone, his equity is gone. It is a well-settled principle, that the laws affecting a contract at the time it is entered into, become, in effect, a part of its stipulations. 4 Wall. 535, 550; 8 Wheat. 92; 1 How. 319; 2 How. 612; 12 Wheat. 231; 6 Cranch, 87; 9 Pet. 359; 10 Cal. 570. In this case, the bill of exchange, and the judgment rendered upon it, were subject to be *extinguished* in case of Watson's death and the insolvency of his estate, by a failure to file the same in the office of the judge of probate within nine months after the declaration of insolvency, verified as required by law. Rev. Code, § 2196. This was not done, and the claim in favor of Rose's estate, against Watson's estate, was thereby forever barred. This has been too long the settled law of this court to be now disturbed. Had the statute of the bar of insolvency been incorporated into the bill of exchange, or the judgment upon it, it could not have been more potent to destroy the rights depending on the bill of exchange or the judgment than it is, upon the failure to file the claim as required by the statute. This is a condition of the contract and the judgment, by which Rose, on receiving it, pledged himself to abide. If he failed to file his claim on the insolvency of Watson's estate, he released that estate from its payment. The property conveyed in the mortgage to Gunter and Rives is still, in equity, the property of Watson's estate; and as such it has been sold to Mrs. Watson; and her equity is superior to those claiming under the judgment, which is barred. She is entitled to the protection of the bar of the decree of insolvency, to the same extent at least that Watson's estate is entitled to be protected. If this were not so, then Mrs. Watson would be coerced to pay a debt for Watson's estate, which it is shown that Watson's estate does not owe.

[Murrell v. Smith.]

We are unwilling to extend the principle relied on by the ingenious and learned counsel for the appellees to such a case as this. They do not show a superior equity to Mrs. Watson.

Our attention has been called to the case of *Mahone* v. *Haddock et al.* (44 Ala. 92), as in conflict with the decision in this case upon the question of the extinguishment of the claim here insisted on by the effect of the statute of non-claim. In *Mahone* v. *Haddock*, *supra*, the claim was a vendor's lien. In that case, we followed the decision in *Duval's Heirs* v. *M'Losky*, 1 Ala. 708. This latter case has never been overruled; and we feel that there is sufficient distinction between the two cases, to justify a refusal to disturb either.

It will be time enough to discuss such equities as Gunter or Rives may be supposed to have under the mortgage in this case, when they are specifically sought to be enforced in their favor, or in favor of either of them. In this case, we deem it improper to do more than to settle the equities between Mrs. Watson and Rose's estate.

The rehearing is denied, with costs.