# Smith *et al. v.* Gillam *et al.*

### *Bill in Equity by Creditor for Right of Subrogation.*

1. *Subrogation of creditor to right of security given by surety to his principal.*—A mortgage executed by a principal debtor to indemnify his surety, creates a trust fund for the payment of the debt, to the benefit of which the creditor is entitled, by way of subrogation.

2. *Bar of mortgage debt does not affect specific lien of mortgage.*—The failure of the mortgagee to present his claim for the mortgage debt, within the time prescribed by the statute of non-claim, does not affect his specific lien in, or title to the property.

3. *Claim of title distinguished from mere claim against estate.*—Claims of *title*, whether legal or equitable, do not come within the statute of non-claim, and can not in any just sense be said to be claims against the "estate" of the deceased, but assertions that the property claimed does not belong to the estate.

4. *Same; Watson v. Rose's Ex'rs* (51 Ala.) *overruled.*—There is no distinction in the principle, whether the mortgage or other lien is held by the creditor himself, or by a surety. The contrary doctrine asserted in *Watson v. Rose's Ex'rs*, 51 Ala. 292, is wrong, and that case is expressly overruled.

5. *Discharge of principal by operation of law not discharge of surety.* The discharge of a principal by operation of law, as in case of bankruptcy, insolvency, or of non-claim, does not operate to discharge a surety who is liable for a debt.

6. *Adverse possession.*—The rule on the subject of adverse possession by the alienee of a mortgagor is correctly and clearly stated in the case of *The State v. Conner*, 69 Ala. 212.

7. *Title barred—trustee—cestui que trust.*—When the title of the trustee is barred, so also is that of the *cestui que trust*.

APPEAL from the Chancery Court of Tallapoosa.

Heard before Hon. N. S. GRAHAM.

The bill in this case was filed by Harry J. Gillam and Mary J. Gillam, the heirs-at-law of Harry Gillam, deceased, and charged that one William M. A. Mitchell was indebted to the estate of their father by promissory notes, with John Rowe and Salmon Washburne as sureties thereon; that on the 19th of March, 1866, the said Mitchell, "being desirous to secure the said John Rowe against loss by virtue of his suretyship on said notes," executed and delivered to him a mortgage upon certain lands, set out in the bill. The bill further charges, that said mortgage deed was executed and delivered to said John Rowe by said Mitchell, for the purpose of indemnifying the said Rowe against any loss by reason of his suretyship on said notes, and also to secure the prompt payment of the same. Said notes were transferred, by the administrator of Harry Gillam's estate,

to the guardian, B. S. Johnson, of complainants, as their dis-
tributive share of the estate, who reduced them to judgment at
the Fall term, 1866, of the Circuit Court of Tallapoosa county,
against the said Mitchell and John Rowe.  The bill avers that
both Mitchell and Rowe had died before the filing of this bill,
and that both were insolvent; that the said B. S. Johnson had
died without making final settlement of his guardianship of
complainants, and that at the time of his death, he was indebted
to complainants as their guardian, in the full amount of the
judgment obtained by him against Mitchell and Rowe; that he
left a will appointing his widow, Elizabeth F. Johnson, as ex-
ecutrix, who had qualified and was proceeding to execute said
will.

The bill avers, also, that Independence Jane Mitchell, the
widow of the said William M. A. Mitchell, was asserting claim
to a part of the lands embraced in said mortgage, as her home-
stead, and was receiving the rents and profits of the same.

The bill prays for an account of the amount due complain-
ants on said judgment; that a trust be decreed in the mort-
gaged premises in favor of complainants, and that they be sub-
rogated to all the rights of an equitable mortgagee as to said
mortgaged property; prays for a sale of the mortgaged prop-
erty and an application of the proceeds to the payment of com-
plainants' judgment, &c.

Independence J. Mitchell, the widow, Reuben A. Mitchell,
as the executor, and the children of William M. A. Mitchell;
Elizabeth F. Johnson, the executrix of B. S. Johnson, and the
heirs-at-law of John Rowe, were made parties defendant.

R. A. Mitchell, as the executor of the estate of William M.
A. Mitchell, demurred to the bill on the ground that it sought
a settlement and accounting of *one item only* of the guardian's
indebtedness to complainants, and *did not seek a final settlement*
of such guardianship.

This demurrer was overruled.   Other defendants interposed
various demurrers, all of which were overruled.

R. A. Mitchell, as executor of William Mitchell, answered,
setting up, by plea, the statute of non-claim of eighteen months,
and averred that the claim of complainants had not been pre-
sented to him within eighteen months after the grant of letters
testamentary to him on said William Mitchell's estate, claiming
that it was therefore forever barred as against said estate; and
that complainants could not be subrogated so as to maintain
this suit thus barred against the principal debtor.   This plea
was declared insufficient and overruled.

Two of the defendants, B. S. Smith and J. F. Lovejoy, filed
a joint answer, claiming a part of the lands sought to be sub-
jected to complainants' claim; said Smith claiming that he pur-

[Smith et al. v. Gillam et al.]

chased from William M. A. Mitchell on the 12th of February, 1870, in good faith, without any notice of any encumbrance on the land he bought, had paid the full amount of the purchase-money, received a warranty deed, and had been put in possession and had continuously held possession, openly and adversely, for more than ten years before the filing of complainants' bill, except two acres of said purchase, which he had sold to the said Lovejoy, who claimed adverse possession of ten years.

The chancellor overruled the pleas of these defendants, and rendered a decree granting the relief prayed by complainants, giving them a lien upon all the lands in the mortgage executed by William M. A. Mitchell to John Rowe, ordered an account to be taken of complainants' debt, and a sale of the lands to pay the same, with authority to the register to issue a writ of possession to purchaser or purchasers at such sale. From this decree, and from the previous decrees upon demurrers, appellants take this appeal, assigning said decrees as error.

W. D. BULGER, W. H. BARNES, OLIVER & GARRETT, for appellants.—1. The debt sought to be recovered not having been presented as a claim against William M. A. Mitchell's estate within eighteen months from the grant of letters of administration upon said estate, the claim was forever barred, and the debt destroyed.—*Puryear v. Puryear*, 34 Ala. 555; *Thrash v. Sumwall*, 5 Ala. 13; *Watson v. Rose's Ex'rs*, 51 Ala. 292; *Murdock v. Rousseau's Adm'r*, 32 Ala. 611; *Roy v. Thompson*, 43 Ala. 450. 2. The mortgage is but incident to the debt, and if the debt is *paid, extinguished* or *destroyed,* the mortgage has no vitality.—*Duval's Heirs v. McLoskey*, 1 Ala. 708; *Emanuel & Gaines v. Hunt*, 2 Ala. 190. There being no debt, there can be no mortgage. 3. By the proof, B. S. Smith was, in his life-time, an adverse holder of the land, *bona fide*, under color of title, for more than ten years, before the filing of complainants' bill. The chancellor should have decreed against complainants as to the B. S. Smith lands.— *Walker v. Crawford*, 70 Ala. 567; *Farmer v. Eslava*, 11 Ala. 1028; *Tayloe v. Dugger*, 66 Ala. 444.

JOHN M. CHILTON, and J. A. TERRELL, *contra,* cited *Ohio Life Ins. Co. v. Ledyard*, 8 Ala. 626; *Toulmin et al. v. Hamilton*, 7 Ala. 362; *Daniel v. Hunt*, 77 Ala. 567.

SOMERVILLE, J.—The bill in this case was filed by two wards against the executrix of their deceased guardian and others, claiming the right to be subrogated to the benefit of a mortgage, executed by a principal debtor of the ward's estate to a surety on the debt for the purpose of indemnifying and

[Smith et al. v. Gillam et al.]

securing him.  The debt was reduced to judgment in favor of the guardian, Johnson, in the fall of 1886, against all the makers of the note by which it was evidenced.  In March, 1886, the mortgage in question was executed by one Mitchell, the principal debtor, to his surety, Rowe, being duly registered as required by law.

The nature of this security does not admit of any doubt.  It is not only one of indemnity to the surety, but it was given to secure the debt.  It provides that the mortgagee may sell the lands conveyed in the event of the mortgagor's failure or refusal to pay the mortgage debt.  A trust fund was thus created for the payment of the debt, to the benefit of which the creditor was entitled, by way of subrogation, whether the surety was actually damnified or not.  This principle is well established by a long line of authorities in this State, which will be found cited and discussed at some length by us, in the case of *Daniel v. Hunt,* 77 Ala. 567.

We are satisfied from the testimony that the complainants are the sole beneficial owners of the judgment recovered by their guardian, in which the debt secured by the mortgage was merged.  Their guardian, who was the plaintiff in the judgment, was their trustee and certainly recovered it for their benefit.  Upon the death of the guardian the legal title of the claim passed to his personal representative, who is made a party defendant to the present suit.  The whole ownership, legal and equitable, was therefore vested in the wards and the executrix of their guardian, and in no other person.  It is shown, however, that there was a settlement between the parties, prior to this suit, in which receipts were given by the complainants in full of all demands against the guardian or his estate.  We are satisfied this judgment against Mitchell and Rowe was not included in this settlement.  This is asserted by the complainants, and the executrix also admits and testifies to the fact.  She disclaims all interest in it in favor of complainants, and this is conclusive against the defendants, affording them full protection in the event of their paying or satisfying it.  The demurrer to the bill, based on this phase of the case, was properly overruled.  It misapprehended the scope and purpose of the bill as one filed for the settlement of the guardianship, and, as such, defective in demanding a partial account of one item only instead of a full and final accounting.  Its purpose was to claim the equitable ownership in the mortgage debt as a specific trust fund, and to have the mortgage given by Mitchell to Rowe foreclosed in favor of the complainants.

The fact that the mortgage debt was barred by the statute of non-claim as against the estate of Mitchell, the mortgagor, was

]Smith et al. v. Gillam et al.]

no defense to this suit, so far as the mere foreclosure of the mortgage itself was concerned. It has long been settled in this State that the failure of a mortgagee to present his claim for the mortgage debt, within the time prescribed by the statute of non-claim, does not affect his specific lien in, or title to the property. The claim itself as a moneyed demand is declared to be "forever barred," and it is no doubt extinguished so far as the general liability of the decedent's estate is concerned. *Duval v. McLoskey*, 1 Ala. 708; Code, 1876, § 2597. But claims of *title*, whether legal or equitable, do not come within the statute, and, as observed in *Locke v. Palmer*, 26 Ala. 312, 324, "can not, in any just sense be said to be claims against the estate of the deceased; (but) on the contrary, the right to recover is based upon the fact that the property claimed does not belong to the estate."—*Rhodes v. Hannah's Adm'r.*, 66 Ala. 215. In *Flinn v. Barber*, 61 Ala. 530, this principle was held applicable to an ordinary vendor's lien, where a conveyance of title had been made to the vendee, and in *Mahone v. Maddock*, 44 Ala. 92, it was applied to a vendor's lien acquired under a bond to convey title, the court holding that the failure to present the claim to the administrator of the debtor's estate did not, in either case, cut off the lien on the land, but only extinguished the right of the creditor to participate, with the other creditors, in the distribution of the general estate of the decedent. We consider this to be a rule of property in this State, which is not to be disturbed except by legislative enactment.

It is said, however, that this principle is applicable only when the mortgage or other lien is held by the creditor himself, and that it can not be permitted to apply where it is held by a surety, although it was given to indemnify the surety and to secure the debt. The argument is that the debt due by the principal to the creditor, being barred as against the estate, is thereby extinguished, and that the creditor can not come into a court of equity asking for the condemnation of property to satisfy an extinguished debt. The case of *Watson v. Rose's Ex'rs.*, 51 Ala. 292, is cited in support of this view and sustains it. The doctrine of that case is in our judgment wrong, and we have no hesitation in declaring it overruled. The fallacy upon which it rests is manifest. It regards the debt as extinguished in the sense that it has been paid and satisfied, and seeks to make a distinction between a mortgage conveyance made directly to a party, and one made to a trustee for his benefit. The discharge of a principal by operation of law, as in case of bankruptcy, insolvency, or of non-claim, does not operate to discharge a surety who is liable for a debt.—*State v. Parker*, 72 Ala. 181; *Garrett v. Roper*, 10 Ala. 842. The

[Smith et al. v. Gillam et al.]

discharge of Mitchell's estate because of a failure to present the claim did not satisfy the debt. His surety Rowe was still liable on it, just as if the principal debtor was still living. The title held by him as mortgagee of the lands in dispute was vested in him to indemnify him against this liability. He held it as trustee for the creditor, and equity will regard the possession of the trustee, actual or constructive, as that of the beneficiary. Subrogation is merely the substitution of one person to the rights of another by transfer. It would be violative of many sound rules of law, as well as repugnant to a spirit of honest and fair dealing, to sustain the distinction thus contended for by the learned counsel for the appellees.

The decree of the chancellor is in full harmony with the foregoing views.

But there is one view of the case in which we do not concur with him. It is our opinion that the claim of the mortgagee, and therefore of the complainants who can be subrogated only to his rights, was barred by the statute of limitations of ten years so far as regards the lands conveyed by the mortgagor, Mitchell and his wife, to Benjamin S. Smith by deed of conveyance bearing date February 12th, 1870. In 1874 two acres of this land were conveyed by Smith to one Lovejoy, who is also a defendant to the suit, and sets up the statute of limitations as a defense.

The rule on the subject of adverse possession by the alienee of a mortgagor is correctly and clearly stated in *The State v. Conner*, 69 Ala. 212, where a distinction is drawn between such a case and that of a sub-vendee, who takes a conveyance and holds adversely under one who is a mere executory purchaser without title. As the mortgagor himself does not *prima facie*, hold adversely, but in subordination to the title of the mortgagee, the presumption is that the alienee of the mortgagor holds in the same right, and asserts no higher claim of title. "To convey such possession into an adverse holding, there must be a renunciation or disclaimer of the mortgagee's right, and that renunciation must be traced to his knowledge. Till this is done such possession is not regarded as adverse." *State v. Conner, supra*, and cases there cited; *Coyle v. Wilkens*, 57 Ala. 108. The rule is the same as that which governs in the case of an adverse holding by the trustee of an express trust, of a tenant against his landlord, or of one tenant in common against another.—*McCarthy v. McCarthy*, 74 Ala. 546; *Mastie v. Aiken*, 67 Ala. 313; *Brady v. Huff*, 75 Ala. 80. The knowledge which is thus required need not always be actual, but it may be constructive or imputed by law— *Wells v. Sheerer*, 78 Ala. 142; *Lucas v. Daniels*, 34 Ala. 188.

The testimony shows such an adverse holding by Smith, and

his sub-vendee Lovejoy, as in our opinion to impute knowledge to Rowe, the mortgagee. The deed from Mitchell to Smith was executed in February, 1870, more than ten years before the present bill was filed, which was not until March, 1881. It was a warranty deed, as was that from Smith to Lovejoy for the two acres sold him. Full consideration was paid for the land, and the purchasers were placed in possession. Improvements were made upon the premises by both parties, such as fencing and outhouses, and there seems to have been an unequivocal assertion of exclusive ownership by a possession and claim of title which were open, notorious, and hostile in its nature. The mortgagee, Rowe, had publicly stated at a sheriff's sale of some of the lands included in the mortgage that the debt was settled and free from any lien in his favor. He made a like statement to others in the neighborhood, and no doubt was honest in entertaining such a belief in view of the facts. It is not unlikely that his statement was known to Smith in view of its great publicity. These facts convince us that Rowe must have known that the possession of Smith, and those holding under him, was hostile to his title as mortgagee, the validity of which he had himself thus disavowed and repudiated so openly. In our opinion, the chancellor erred in not sustaining the statute of limitations as a bar to complainant's suit, so far as regards the lands conveyed by Mitchell and wife to Smith, as described in their deed bearing date February 12th, 1870.

Such possession operating to bar Rowe, who held the title of a mortgagee, would also bar the complainants. When the title of the trustee is barred, so also is that of the *cestui que trust.* *Mastie v. Aiken,* 67 Ala. 313; 1 Brick. Dig. p. 51, §§ 39–40; 6 Perry on Trusts, § 663.

The decree of the chancellor will be reversed, and a decree will be rendered in this court foreclosing the mortgage, for the benefit of the complainants, as to all the lands except those conveyed to Benjamin S. Smith by the deed of Mitchell and wife, in accordance with the prayer of the bill. The costs in this court and the court below will be paid out of the proceeds of sale.